IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO.  09-193 |
| v. | : | |
| | : | CIVIL NO.  13-1173 |
| KENNETH HAMPTON | : | |

SURRICK, J.                                                                                                    JANUARY  28 , 2014

**MEMORANDUM**

Presently before the Court is Defendant Kenneth Hampton's pro se Motion to Vacate/Set Aside/Correct Sentence under 28 U.S.C. § 2255 (ECF No. 114).  For the following reasons, the Motion will be denied.

**I.     BACKGROUND**

On February 25, 2009, special agents of the United States Secret Service and other law enforcement agencies executed a search warrant for 5750 Spruce Street in Philadelphia, Pennsylvania.  (Guilty Plea Mem., ECF No. 59.)  Inside the property, agents identified counterfeit United States currency as well as materials that were being used to produce counterfeit currency.  (*Id*. at 8-9.)  In an upstairs bedroom, agents discovered bank statements and insurance cards in the name of Defendant, Kenneth Hampton.  (*Id*. at 8.)  In the same room, agents discovered a briefcase containing two certificates of birth identifying Kenneth Hampton as the father, a certificate of birth for Kenneth Hampton, two copies of a social security card issued to Kenneth Hampton, and multiple photographic identifications for Kenneth Hampton.  (*Id*. at 8-9.)  Located in the same briefcase were a number of counterfeit Federal Reserve notes in various stages of completion.  (*Id*. at 8.)  The resident of the property, Peree Hampton, informed

agents that he was aware that counterfeit currency was being manufactured in his home and that he participated in the operation with his uncle, Kenneth Hampton.  (*Id*. at 9.)

During the course of the search, Defendant approached the residence and looked into a window.  (*Id*. at 9.)  When confronted by agents, Defendant claimed that he had approached to tell them that the lights of a vehicle parked in the street were on.  (*Id*.)  Defendant was subsequently arrested and found to be in possession of a key to 5750 Spruce Street.  (*Id*.)

On March 26, 2009, Defendant was one of three individuals indicted as part of a conspiracy to manufacture and possess counterfeit currency.  (Indictment, ECF No. 15.)  Defendant entered into a written plea agreement with the United States Attorney's Office on October 5, 2009.  (Guilty Plea Agreement, ECF No. 62.)  Under the terms of the agreement, Defendant entered a plea of guilty to conspiracy to make and deal in counterfeit currency (Count I), and manufacturing counterfeit obligations (Count II).  (*Id*. at ¶ 1.)

On October 26, 2009, a change of plea hearing was held.  (Min. Entry, ECF No. 61.)  During the course of the plea colloquy, defense counsel suggested that the Sentencing Guidelines called for a range between sixteen and thirty-six months.  (Oct. 26, 2009 Hr'g Tr. 18, ECF No. 85.)  The Government responded that defense counsel's calculations were as close as any that it could come up with in advance of the presentence report.  (*Id*. at 20.)  We expressed surprise that the Sentencing Guidelines did not call for a higher sentencing range given Defendant's prior convictions.  (*Id*. at 20-21.)  We noted, however, that this Court would make an actual determination as to what the Sentencing Guidelines provided based upon the information available at the time of sentencing.  (*Id*.)  In addition, Defendant was advised during the guilty plea colloquy, and in the written plea agreement, that the guilty plea subjected him to a statutory

maximum prison sentence of twenty-five years. (*Id*. at 8; Guilty Plea Agreement ¶ 6.) Defendant also acknowledged in the plea agreement, and during the colloquy, that no one had promised or guaranteed what sentence this Court would impose. (Guilty Plea Agreement ¶ 12; Oct. 26 Hr'g Tr. 16, 20-21.) Following the colloquy, we accepted Defendant's plea and ordered a Pre-Sentence Investigation Report. (Oct. 26 Hr'g Tr. 25.)

On March 24, 2010, a sentencing hearing was held. During the hearing we adopted the factual matter contained in the Pre-Sentence Report. (Mar. 24, 2010 Hr'g Tr. 4, ECF No. 87.) Both parties agreed with the calculation of the Guideline range of 51-63 months in the Pre-Sentence Report. (*Id*. at 3-4.) After considering all of the relevant circumstances, we granted the Government's motion for an upward variance and sentenced Defendant to a prison term of eighty-four months. (*Id*. at 15-16.) On March 30, 2010, Defendant appealed his sentence to the United States Court of Appeals for the Third Circuit. (ECF No. 80.)

Defendant's guilty plea resulted in the violation of his supervised release from a 2005 counterfeiting conviction. On November 18, 2010, a violation hearing was held and Defendant stipulated to a violation of the terms of his supervised release. (Violation Hr'g Tr. 76, Gov't's Resp. Ex. A, ECF No. 124.) A twelve-month sentence was imposed to be served consecutively to the sentence imposed for the underlying crimes. (*Id*. at 83.) Defendant filed a timely appeal. By order of January 14, 2011, the Third Circuit consolidated Defendant's appeals. *United States v. Hampton*, No. 10-1915 (3d Cir. 2011)

On appeal, Defendant argued ineffective assistance of counsel because his trial attorney "simply had no grasp on what the Guidelines were" and "affirmatively lead the Defendant to believe something that simply was not true." (Def.'s Appellate Br. 12, Gov't's Resp. Ex. B.)

3

Defendant further argued that he was given "no meaningful idea of where he would fit in" to the Sentencing Guidelines (*Id*. at 20), and that "he would have gone to trial and would not have pled guilty if he had only known the Guidelines . . . ." (*Id*. at 15).  Defendant argued that his plea was not entered "knowingly, intelligently, or voluntarily." (*Id*. at 20.)  The Third Circuit considered and rejected these arguments in an opinion filed on September 13, 2011.  *United States v. Hampton*, 444 F. App'x 583, 585 (3d Cir. 2011).

On October 13, 2011, the Third Circuit granted Defendant's pro se motion for an extension of time to file a petition for rehearing.  *Hampton*, No. 10-1915.  On December 12, 2011, defense counsel filed a petition for writ of certiorari with the United States Supreme Court.  *United States v. Hampton*, No. 11-7808 (2011).  This petition was denied on January 17, 2012.  (*Id*.)  On January 27, 2012, Defendant filed a pro se motion with the Third Circuit requesting leave to file a petition for rehearing out-of-time.  *Hampton*, No. 10-1915.  The petition was granted on February 7, 2012, however the Court subsequently denied Defendant's motion on February 23, 2012.  (*Id*.)

On February 14, 2013, Defendant filed the instant pro se Motion to Vacate/Set Aside/Correct Sentence under 28 U.S.C. §2255.  (Def.'s Mot., ECF No. 114; Def.'s Mem., ECF No. 115.)[1]  On September 6, 2013, the Government filed a Response in opposition.  (Gov't's Resp.).  On October 25, 2013, Defendant filed a Reply.  (Def.'s Reply, ECF No. 128.)

---

[1] A pro se prisoner's § 2255 petition is "deemed filed at the moment he delivers it to prison officials for mailing to the district court." *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).  We review a prisoner's pro se petition liberally and with a measure of tolerance. *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1999).

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).  Prisoners have one year from the later of the following acts to file a petition under § 2255(f):

> (1) the date on which the conviction became final; (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the defendant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.[2]

---

[2] Although the parties do not address the issue, there is a question as to the timeliness of Defendant's Motion under § 2255(f)(1).  It is well established that "when a defendant timely files a petition for certiorari review, the defendant's judgment of conviction does not become 'final' until the Supreme Court acts."  *Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999).  The Supreme Court's ruling on a certiorari petition brings finality to the decision of the court of appeals because it "precludes further controversy on the questions passed upon, and is a decision from which no appeal or writ can be taken."  *Id.* at 570.

Defendant filed this § 2255 Motion on February 14, 2013, one year and twenty-eight days after the United States Supreme Court denied his counseled petition for writ of certiorari.  Therefore, it could be argued that Defendant's Motion is time-barred by the one-year limitation

While the court may in its discretion hold an evidentiary hearing on a § 2255 petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if the "motion and the files and records conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

## III.   DISCUSSION

Defendant's Motion asserts that trial counsel was ineffective for: (1) inducing Defendant's plea based on a false analysis of the Sentencing Guidelines; (2) coercing Defendant into entering a plea agreement based on fraud; and (3) refusing to investigate exculpatory evidence. Defendant also argues that the violation of his supervised release should be reversed because it was triggered by his counterfeiting convictions, which he maintains are unconstitutional.

A defendant's claim of ineffective assistance of counsel has two components. *Strickland v. Washington*, 446 U.S. 668, 687 (1984). First, the defendant must demonstrate that the representation he received was deficient. *Id.* Second, the defendant must prove that the deficiency resulted in prejudice. *Id.* Deficiency is established by showing that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *United States v. Smack*, 347 F.3d 533, 537 (3d Cir. 2003) (quoting *Strickland*, 446 U.S. at 688). Prejudice, at the plea stage, "focuses upon whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

period imposed by § 2255. While it is within this Court's discretion to sua sponte raise the issue of timeliness, we will not do so and will instead rule on the merits of Defendant's claims. *United States v. Bendolph*, 409 F.3d 155, 166-68 (3d Cir. 2005).

6

### A. Sentencing Guidelines

Defendant argues that he was denied effective assistance of counsel because his guilty plea resulted from a false analysis of the Sentencing Guidelines. (Def.'s Mem. 13.) This argument is strikingly similar to the argument that was rejected by the Third Circuit on Defendant's direct appeal. In the Third Circuit, Defendant argued that his trial counsel was "patently ineffective" because he "simply had no grasp on what the Guidelines were." (Def.'s Appellate Br. 12.) In affirming this Court's judgment, the Third Circuit noted that, "counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Hampton*, 444 F. App'x at 587. The Court further noted that "the law does not require that a defendant be given a reasonably accurate best guess as to what his/her actual sentence will be . . . ." *Id*. Rather, all that is required is that "the defendant be informed of his/her exposure in pleading guilty." *Id*. The Third Circuit found that this Court's colloquy, as well as the written plea agreement, informed Defendant that he faced a maximum sentence of twenty-five years. *Id*. at 587. The Third Circuit rejected Defendant's argument that his plea was not entered into knowingly, intelligently, or voluntarily. *Id*.

It is well settled that a § 2255 petition cannot be used to "'relitigate matters decided adversely on appeal.'" *United States v. Pelullo*, 305 F. App'x 823, 827 (3d Cir. 2009) (quoting *Gov't of the Virgin Islands. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985)). Nevertheless, Defendant argues that the Third Circuit's holding in *Hampton* should be considered irrelevant in these proceedings. (Def.'s Mem. 14.) Defendant's argument is based on the allegation that

7

appellate counsel completely misunderstood the relevant issue and therefore filed an "inadequate, unfounded and flawed appeal." (*Id*. at 13.)

Defendant's § 2255 petition fails to identify a single fact or issue that was not considered by the Third Circuit on direct appeal.[3] Defendant claims that trial counsel's failure to evaluate Defendant's criminal history, and its effect on the Sentencing Guidelines, constituted ineffective assistance. In support, Defendant cites cases in which misadvice about sentencing rendered a defendant's plea involuntary and unknowing. *See United States. v. Day*, 969 F.2d 39, 44 (3d Cir. 1992) (noting that if the defendant "was seriously misled about his sentence . . . he received ineffective assistance of counsel); *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (finding that the failure to inform client of maximum sentence that he could receive falls below objective standard of reasonableness); *Esslinger v. Davis*, 44 F.3d 1515, 1530 (11th Cir. 1995) (finding that defense counsel provided ineffective assistance when he did not make the judge aware of the defendant's criminal record at the guilty plea hearing).

The cases relied upon by Defendant are easily distinguished. Moreover, they fail to establish why the Third Circuit's holding in *Hampton* should not be given preclusive effect. In *Day* and *Herrera*, a plea hearing was not conducted because the defendants were sentenced following trial. *Day*, 969 F.2d at 42; *Herrera*, 412 F.3d at 579. In *Esslinger*, a plea hearing was held, however the judge, who was unfamiliar with the defendant's criminal record, provided the

---

[3] In fact, as the Government points out, large portions of Defendant's § 2255 Memorandum appear to have been copied directly from Defendant's appellate brief. (Gov't's Resp. 13 n.5.) Defendant argues that this was necessary due to the fact that he did not have access to the record when he prepared his Memorandum. (Def.'s Reply 11.) However, Defendant's Reply, which was filed after Defendant had an opportunity to review the transcript of the change of plea hearing, also fails to identify any new facts or issues.

8

defendant with incorrect information regarding his minimum sentence. 44 F.3d at 1518. In the instant case, a plea hearing was held and this Court was made aware of Defendant's criminal history. In fact, we informed Defendant that his prior convictions would increase his sentencing range. (Oct. 26 Hr'g Tr. 20-21.) More importantly, we informed Defendant that he was subject to a twenty-five year maximum sentence and that we would determine the exact Sentencing Guideline range at the time of sentencing. Therefore, "any erroneous sentencing information allegedly provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated Hampton's potential sentence." *Hampton*, 444 F. App'x at 587. We find the Third Circuit's rationale in *Hampton* equally applicable to Defendant's current claim.

### B. Fraudulent Misrepresentation

Building upon his first claim, Defendant, who now asserts his complete innocence, alleges that he was coerced into pleading guilty by the fraudulent misrepresentations of his trial counsel. More specifically, Defendant claims that, in exchange for his guilty plea, trial counsel promised Defendant a sentence of fifteen months and a partial return of his attorney's fee. (Def.'s Mot. 29; Def.'s Reply 12.) Defendant claims that he accepted the promised sentenced of fifteen months because he could have spent over a year awaiting trial. (Def.'s Reply 13.) Finally, Defendant claims that his guilty plea resulted from counsel's failure to prepare for trial. (Def.'s Mem. 27; Def.'s Reply 13.)

"A habeas Defendant challenging the voluntary nature of his . . . guilty plea faces a heavy burden." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). This is because the guilty plea colloquy "is designed to uncover hidden promises or representations as to the consequences of a

guilty plea." *Id*. at 320. Thus, "[a] petitioner challenging the voluntary nature of a facially valid guilty plea based on unfulfilled promises or representations by counsel must advance specific and credible allegations detailing the nature and circumstances of such promises or representations." *Id*. at 320-21 (citing *Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir. 1991).

An evidentiary hearing may be required "[w]here the voluntariness of the plea is attacked with an assertion that one's counsel or the prosecutor, or both, made an out-of-court arrangement, or 'proposition' as to the outcome of a sentence, which differs from that pronounced by the court." *United States v. Valenciano*, 495 F.2d 585, 587 (3d Cir. 1974). However, a hearing is not required where the "alleged representation was no more than counsel's inaccurate prediction of the sentence." *Id*. at 588; *see also Masciola v. United States*, 469 F.2d 1057, 1058-59 (3d Cir. 1972) (finding that evidentiary hearing was not required where the defendant did not indicate any basis on which the assurances were made, did not allege any Government involvement in communicating the assurances, and did not allege any understanding between him and the Unites States Attorney's Office or the court). Therefore, the relevant question is whether Defendant "reasonably believed that the statements of his counsel meant that arrangements had been made with respect to the length of the sentence to be imposed upon a plea of guilty . . . ." *United States  v. Hawthorne*, 502 F.2d 1183, 1187 (3d Cir. 1974).

The terms of Defendant's written plea agreement established that Defendant was subject to a maximum prison sentence of twenty-five years and that no guarantees or promises had been made with regard to what sentence this Court would impose. Defendant does not suggest that he was led to believe in the existence of any other arrangements with this Court or the Government.

10

In fact, such a contention would find no support in the record.[4]  Rather, Defendant appears to argue that his guilty plea was based upon his attorney's unilateral promise of a fifteen-month sentence.  We reject this assertion, however, even if Defendant's allegation were accepted as true[5], it does not support a claim for ineffective assistance of counsel.  *See United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (holding that counsel was not ineffective for guaranteeing a sentence of "no more than 71 months" where plea colloquy advised defendant of maximum sentence and there were no other promises regarding his sentence).

As previously discussed, Defendant was informed that by pleading guilty he would be subject to a maximum prison sentence of 25 years.  In fact, Defendant admits that although he thought he was receiving a fifteen-month sentence, he understood that a longer sentence was possible.  (Def.'s Mem. 16.)  Therefore, Defendant's claim of fraudulent misrepresentation must fail.  *See Wittekamp v. Gulf & W., Inc.*, 991 F.2d 1137, 1142 (3d Cir. 1993) (noting that to establish a claim for fraudulent misrepresentation, the defendant must demonstrate that there was

---

[4] The written plea agreement provided that there were "no additional promises, agreements or understandings, other than those set forth in [the] written guilty plea agreement . . . ."  (Guilty Plea Agreement ¶ 12.)  In addition, Defendant responded in the negative when this Court inquired as to whether anyone had pressured him to plead guilty or promised him anything in return for his plea.  (Oct. 26 Hr'g Tr. 16.)  Finally, we made clear that, regardless of what Defendant had been informed, this Court would independently determine the relevant Guideline implications at sentencing:

> Q: Now, you understand that when I bring you back here for sentencing I will determine what the Guideline implications are at that time.  No matter what Mr. Henry has said or no matter what Mr. Shapiro has said the Court will make the determination as to what the Guidelines provide in this case.  Do you understand that?
> A:  Yes

(*Id*. at 20.)

[5] Defendant has at various times referred to counsel's representations as an estimate (Def.'s Mem. 18), and as a promise (Def.'s Reply 12).

11

"justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth").

Defendant's assertions of innocence and financial inducement do not necessitate a contrary holding. A defendant who has pled guilty must do more than simply assert his innocence; he must also "give sufficient reasons to explain why contradictory positions were taken before the district court . . . ." *Jones*, 336 F.3d at 253; *see also United States v. Davis*, 48 F. App'x 809, 811 (2d Cir. 2002) ("Although since his guilty plea the [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

Defendant unequivocally admitted his guilt at his change of plea hearing. At that time, we explained that Defendant had an absolute right to go to trial and that a guilty verdict would require the unanimous vote of twelve jurors. (Oct. 26 Hr'g Tr. 13.) We also set forth what the Government would have to prove in order to prove Defendant's guilt on each charge. (*Id*. at 5-8.) Moreover, Defendant was told the facts that the Government would rely upon in establishing his guilt. In addition to confirming that Defendant had read the Government's plea memorandum, which set forth the factual basis for the charges, we also had the Government read these facts into the record. (*Id*. at 10-11.) When asked whether he understood and admitted those facts, Defendant responded in the affirmative. (*Id*. at 24.)

Defendant's attempts to explain his guilty plea are unpersuasive. As explained above, Defendant's allegation that trial counsel promised a fifteen month sentence is inconsistent with the record and does not constitute fraudulent misrepresentation. Furthermore, Defendant's

12

claims of financial inducement fall short. Defendant contends that he was informed that counsel's fees would triple if the case went to trial. (Def.'s Mem. 7.) We are satisfied based upon this record that Defendant's counsel fees had nothing to do with his decision to plead guilty. Since Defendant's case did not progress to trial, it is not unusual that part of the fee was returned.

### C. Failure to Investigate

Defendant contends that trial counsel failed to investigate three pieces of evidence which support his claim of innocence. First, Defendant claims that he did not have access to the counterfeiting activities taking place inside 5750 Spruce Street. (Def.'s Mem. 23.) Defendant contends that the key found in his possession opened only an outside screen door and could not be used to enter the locked front door. (*Id*. at 5.) Second, Defendant claims that he only stored his personal records at his nephew's house in order to ensure their safe keeping. (*Id*. at 23.) Third, Defendant takes issue with trial counsel's failure to investigate the statements of a co-conspirator who implicated Defendant in the counterfeiting operation. (*Id*. at 24.)

The Third Circuit has held that "an attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997). Therefore, defendants can generally establish deficient representation under *Strickland* if counsel fails to conduct any pretrial investigation. *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989). It is equally true, however, that the nature and scope of an investigation will often be influenced by information provided by the defendant. *Lewis v. Mazurkiewicz*, 915 F.2d 106, 111-14 (3d Cir. 1990) (citing *Strickland* 466 U.S. at 690-91). Therefore, "when the facts that support a certain potential line of defense are

13

generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." *Strickland*, 466 U.S. at 691.

In order to demonstrate ineffective assistance, defendants must also prove that they were prejudiced by counsel's deficient representation. *Kauffman*, 109 F.3d at 190-91. If the alleged deficiency "was a failure to investigate thoroughly, which in turn caused the defendant to plead guilty, the defendant must show a likelihood that some evidence would have been discovered which would have caused his attorney to change his recommendation to enter into a plea agreement." *Id*. at 191 (citing *Hill*, 474 U.S. 52, 59).

Defendant's allegations are directly contrary to the signed guilty plea agreement and the responses provided at the change of plea hearing. *Crucean v. United States*, 113 F. App'x 171, 174 (7th Cir. 2004) (noting that the time to raise concerns about counsel's lack of preparation is at the plea hearing). Defendant's signed plea agreement states that "defendant is satisfied with the legal representation provided by the defendant's lawyer . . . ." (Guilty Plea Agreement ¶ 11.) Moreover, at the plea hearing we asked Defendant if he was satisfied with the representation that he was receiving. (Oct. 26 Hr'g Tr. 5.) We also asked Defendant whether he was satisfied that if he wanted to go to trial counsel would be able to properly represent him. (*Id*.) Defendant responded affirmatively to these questions. (*Id*.)

In addition, Defendant admits that trial counsel, who was in possession of the Government's discovery (*see* Def.'s Mem. 8-9), "knew and understood the relevance" of the evidence that would be provided by Defendant's witnesses (*id*. at 30). Counsel did not need to interview these witnesses in order to weigh the competing evidence and make a reasonable

14

determination as to the likely outcome of a trial. Similarly, because counsel was aware of the evidence that these witnesses would offer, it is unlikely that any further investigation would have changed his recommendation regarding the plea agreement. Even if we were to somehow conclude that counsel's conduct fell below an objective standard of reasonableness, we cannot find that Defendant suffered any prejudice as a result.

### D. Claim Four – Violation of Supervised Release

In a claim not addressed in his Memorandum, Defendant asserts that his violation of supervised release should be voided because it was based upon a constitutionally invalid conviction. Since we have concluded that Defendant's ineffective assistance of counsel claims fail as a matter of law, we necessarily reject and dismiss Defendant's corollary attack on his conviction for violating supervised release.

### E. Certificate of Appealability

The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2. Under 28 U.S.C. § 2253, a Defendant seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Defendant has raised no viable claims. No reasonable jurist could disagree with this assessment. Therefore, a certificate of appealability will not issue.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be denied. There is no basis upon which to hold an evidentiary hearing or to issue a certificate of appealability.

An appropriate Order follows.

                                             **BY THE COURT:**

                                             _____

                                             **R. BARCLAY SURRICK, J.**